# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JERRY L. GATES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:23-cv-04223 |
| GREG DONATHAN, *et al.* | ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff, proceeding pro se and presently detained at Rushville Treatment and Detention Center, brought the present lawsuit pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a). The matter comes before the Court for ruling on Defendants' Motion for Summary Judgment (Doc. 32) and Plaintiff's Motion of Challenge (Doc. 40).

### PLAINTIFF'S MOTION OF CHALLENGE (DOC. 40)

After the parties had fully briefed Defendants' motion for summary judgment, Plaintiff filed a "motion for challenge" that asks the Court to "see that plaintiff is more than a prisoner and let this case move to the [t]rial phase." (Doc. 40 at 2). The Court cannot determine the relief Plaintiff seeks outside of asking the Court to consider the arguments he makes in his summary judgment response. The Court considers Plaintiff's summary judgment arguments below. Plaintiff's motion is denied as moot.

## BACKGROUND

Plaintiff, a civil detainee at Rushville Treatment and Detention Facility ("TDF"), has practiced the New Orleans Voodoo Hoodoo religion since he was a teenager. Pl.'s Dep. 14:21-23, 16:9-11. The practice of this religion is specific to each member of the faith, and, as part of his practice, Plaintiff performs a daily ritual that permits him to communicate with his deity and deceased family members and ancestors. *Id.* 20:20-24, 21:5-23.

Plaintiff testified that his religious book "says that you have to be able to have things that are part of me in order for me to communicate with those people, or those spirits outside of me." *Id.* 49:8-11. Plaintiff accordingly employs several objects as part of his religious practice: three Gris Gris dolls, 13 colored stickpins each measuring approximately one inch, a cross, a coffin proportional in size to one of the dolls, a skull, a holy bible, a Voodoo spell book, an ace of diamonds, a four-leaf clover, a plastic bottle with a cork that is used to trap evil spirits, a set of five dice, two talismans, a Gris Gris bag, wishing beans, chicken bones, and a deck of tarot cards. *Id.* 26:7-27:17.

The Gris Gris dolls serve as a medium between Plaintiff's deity and his deceased relatives. *Id.* 48:17-18. Plaintiff made the largest doll, measuring approximately nine inches tall, from old denim, a t-shirt, and stuffing from a state pillow around 2005. UMF 5, 6; Pl.'s Dep. 38:18-19. He made the other two dolls in 2011—they are white and black, respectively, measure approximately six inches tall, and made from similar fabric and stuffing. UMF 7; Pl.'s Dep. 38:20-22.

The largest doll represents himself, and Plaintiff places the stickpins in the doll in different areas to address "certain issues that I have within myself before I communicate," and to physically relax him. Pl.'s Dep. 29:22-30:24. The black doll is the one he "use[s] to communicate with the spirit world," and the white doll represents the person with whom he desires to communicate. *Id.* 29:6-12. The ability to speak with his deceased parents, grandparents, and ancestors provides Plaintiff with comfort, acknowledgement, and a chance to honor those who have passed since the day he was born. *Id.* 21:5-17. The ritual lasts approximately two-and-one-half hours, and he prefers to perform it four times per day. *Id.* 21:24-25, 22:3. Plaintiff testified that he is now only able to perform the ritual at most once per week. *Id.* 22:4-5.

On November 17, 2023, TDF officials confiscated Plaintiff's three Gris Gris dolls and 12 stickpins "for the purpose of review." UMF 4, 8. According to exhibits Defendants provided, religious items other than books "must be identified by an approved religious leader and approved by the Treatment Team and Security Staff." (Doc. 32-4 at 31-32). Residents also may not possess contraband, which includes "needles (except sewing needles)," pins, "altered property which can be made into a weapon, or any property not being used for its designed purpose or initial purpose," and "any object, item, or food/beverage product that has been determined to pose a therapeutic, fire, health, and/or safety/security risk." *Id.* at 76-77.

Plaintiff told TDF officials of his religious affiliation when his current detention began, and he provided with his summary judgment response several

religious request forms he submitted to TDF officials dating back to 2017. Pl.'s Dep. 39:3-9, 43:1-5; (Doc. 34-1 at 14-27). Plaintiff did not request permission for the dolls because a prior version of the TDF handbook permitted him to practice his religion privately in his room, where the dolls always remained. Pl.'s Dep. 34:20-35:2. Plaintiff testified that he obtained the stickpins from a sewing kit officials had approved in 2012. *Id.* 31:6-20. Current TDF rules permit residents to possess one sewing kit. (Doc. 32-4 at 75).

The record does not disclose whether TDF officials conducted the review of the dolls and stickpins, and, if so, the results of same. Plaintiff testified that, without the dolls, he lacks a vessel through which he can communicate during the ritual, and that "it's like there's a wall up and I can't get through it." Pl.'s Dep. 48:9-11. He testified that the confiscation of the dolls and pins prohibits him from practicing his religion as he sees fit. *Id.* 45:18-52:2.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") prohibits governmental imposition of a "substantial burden on the religious exercise" of a confined individual, even if the burden results from a rule of general applicability, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion; and (2) that the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc–2(b). Once the plaintiff establishes this *prima facie* case, the burden shifts to the government to show that the policy in question was the least restrictive means to further a compelling government interest. *Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 863 (2015).

"Religious exercise" under RLUIPA includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Governmental action substantially burdens religious exercise when the inmate is forced to "engage in conduct that seriously violates his religious

beliefs," regardless of whether other religious accommodations offset the burden imposed.[1] *Holt*, 135 S. Ct. at 862 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014)); *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019).

Plaintiff has affiliated with the New Orleans Voodoo Hoodoo faith for many years, and he has presumably adhered to his current ritual since at least 2011 when he made the second and third dolls. Plaintiff told TDF officials of his religious affiliation when his detention started, and he has also made several religious requests to TDF officials dating back to 2017. Notwithstanding his failure to comply with the current TDF rules, Plaintiff's actions do not permit a reasonable inference that his beliefs were not sincerely held or that his religious practice is a subterfuge for other illicit activity. *Holt*, 135 S. Ct. at 862 (request for religious accommodation under RLUIPA "must be sincerely based on a religious belief and not some other motivation.").

Plaintiff testified that the confiscated items are essential to his practice, and that, without them, he struggles to achieve the type of spiritual communication his religious practice requires. This record supports a reasonable inference that Plaintiff sought to engage in a religious exercise and that TDF officials' confiscation of his religious items imposed a substantial burden on his ability to do so. *Schlemm*, 784 F.3d at 365 (Plaintiff's testimony that denial of game meat for religious

---

[1] This is a departure from prior case law. Prior to the Supreme Court's decisions in *Holt* and *Hobby Lobby*, courts interpreted "substantial burden" for RLUIPA purposes as "one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise…effectively impracticable." *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015); *see also Nelson v. Miller*, 570 F.3d 868, 876 (7th Cir. 2009) (RLUIPA has been "interpreted with reference to Supreme Court free exercise jurisprudence.").

ceremony imposed substantial burden was sufficient where "the record was not so lopsided as to permit that contention's rejection on summary judgment.").

Once the burden shifts, RLUIPA requires courts to examine the application of the challenged practice "to the person." *Holt*, 135 S. Ct. at 863. Officials must explain why they denied the plaintiff an exemption and show that such a denial is the least restrictive means in furtherance of a compelling government interest. *Id.* at 364. The least-restrictive-means standard "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Id.* (citations omitted). If less restrictive means are available, "the Government must use [them]." *Id.*

The parties do not dispute that Plaintiff failed to follow the rules regarding religious items. TDF officials have a compelling interest in safety and security, but RLUIPA requires more than the existence of rules and the desire to enforce them. *Schlemm*, 784 F.3d at 365. The dolls, each measuring less than 12 inches tall and made from soft material, arguably present a lesser opportunity to conceal contraband than the pillows and clothing residents may possess and from which they were made. The dolls' construction, if they were to be used in an assault, presents a lesser risk of harm than other permitted items residents have used to create a makeshift weapon. *See Echols v. Johnson*, 105 F.4th 973, 976 (7th Cir. 2024) (TDF resident attacked another resident with "a laundry bag stuffed with cafeteria trays."); (Doc. 32-4 at 16, 74) (residents allowed to possess two laundry bags; food trays used at every meal).

The fact that TDF rules permit residents to possess one sewing kit and specifically exclude sewing needles from the definition of contraband suggests only that TDF officials do not believe the mere possession of these items presents an unacceptable security risk. Defendants have not presented evidence explaining how the stickpins Plaintiff possessed became more dangerous because he sought to use them within his room as part of his religious practice or why they are unable to provide an accommodation for that purpose.

## Conclusion

The Court finds that the record permits a reasonable inference that Plaintiff sought to engage in a religious exercise and that Defendants' actions imposed a substantial burden on his ability to do so. Defendants have not provided sufficient evidence to show that the denial of an accommodation was the least restrictive means of furthering a compelling government interest. Defendants' motion for summary judgment is denied.

**THEREFORE:**

1) **Plaintiff's Motion of Challenge [40] is denied.**

2) **Defendants' Motion for Summary Judgment [32] is denied.**

3) **A final pretrial conference is scheduled for   February 23, 2026  at 10:00 a.m. The Plaintiff and the Defendants' attorney(s) shall appear via Zoom. The clerk is directed to issue the appropriate writ for the Plaintiff's participation in the conference.**

4) **The parties are further directed to submit the joint, proposed final pretrial order by    February 16, 2026         . Counsel for the Defendants is responsible for preparing this order and it shall conform in content and form to Local Rule 16.3(I)(3) and Appendix 2 of the local rules of this district. Witness lists shall be redacted and an unredacted list shall be filed separately using the event "Witness**

List." Jury instructions shall be e-filed in three separately numbered parts: Agreed Instructions, Plaintiff's Instructions (to which Defendant objects), and Defendant's Instructions (to which Plaintiff objects).

5) The Plaintiff and Defendants shall appear in person at trial. Detainees of the Illinois Department of Human Services (DHS) who are not parties to this case shall appear by video conference and DHS employees who are not parties may also appear by video conference at trial. Other nonparty witnesses may appear by video at the court's discretion. Therefore, the proposed pretrial order must include: (1) the name, inmate number and place of incarceration for each inmate to be called as a witness; (2) the name and place of employment for each DHS employee to be called as a witness; and, (3) the names and addresses of any witnesses who are not inmates or employees for whom a party seeks a trial subpoena. The party seeking the subpoena must provide the necessary witness and mileage fees pursuant to Federal Rule of Civil Procedure 45.

6) A jury trial is scheduled for  **March 23, 2026**  at 9:00 a.m. in Courtroom D at the U.S. Courthouse located at 100 NE Monroe Street, Peoria, Illinois. No writ shall issue for the jury trial at this time

*SO ORDERED.*

Entered this 26th day of August, 2025.

                                                                               s/Ronald L. Hanna
                                                                                   Ronald L. Hanna
                                                         United States Magistrate Judge